IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DERBYSHIRE BAPTIST CHURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:19cv731–HEH |
| ) | |
| CHURCH MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
### (Cross-Motions for Summary Judgment)

On June 26, 2019, a large portion of the sanctuary ceiling of the Derbyshire Baptist Church collapsed, causing substantial damage. The Church ("Derbyshire Baptist" or "Plaintiff") filed a timely claim with its insurance carrier, the Defendant Church Mutual Insurance Company ("Church Mutual" or "Defendant"). After reviewing the claim and inspecting the damaged area, Church Mutual denied coverage, contending that the damages are outside the scope of the insurance policy's terms. This declaratory judgment action followed, seeking this Court's construction of the pertinent terms and provisions at issue.

The parties have filed memoranda supporting their respective positions (ECF Nos. 14, 16), and the Court heard oral argument on June 16, 2020. For the reasons stated herein, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part, and Defendant's Motion for Summary Judgment will be granted in part and denied in part.

The material facts are largely undisputed.[1] On June 26, 2019, a portion of the ceiling of Plaintiff's sanctuary failed and fell to the floor. (Joint Stip. ¶ 3, ECF No. 12.) At the time, Plaintiff's premises, including the sanctuary, were covered by a property insurance policy with Defendant (the "Policy," ECF No. 1-2). (Joint Stip. ¶ 8.) As a result, Plaintiff notified Defendant of the ceiling failure, and Defendant engaged a forensics engineer, Johnathan Hatlee ("Hatlee"), to determine the cause of the ceiling's failure. (*Id.* ¶¶ 7, 9.)

The parties accept the contents of Hatlee's investigative report as agreed material facts ("Hatlee's Report," ECF No. 1-3). (Joint Stip. ¶¶ 10–11.) Hatlee found that the collapse was caused by the disconnection of wire support hangers from the wood roof beams, which increased the load on the adjacent hangers. (Hatlee's Report at 2.) Principally, he concluded that "[t]he redistribution of load on the hangers resulted in a progressive failure of the hangers and their supported components." (*Id.*) He determined that the initial failure of the wire support hangers from the wood roof beams was caused by the thermal expansion and contraction of the wood roof beams as the temperature and humidity fluctuated, which allowed the nails attached to the hangers to withdraw from the beams. (*Id.*)

Following the completion of Hatlee's Report, Defendant denied coverage, notifying Plaintiff in a letter dated July 17, 2019. (Joint Stip. ¶¶ 10, 12.) In so doing, it explained that the causes of Plaintiff's loss or damage were excluded *and* limited under

---

[1] The parties filed a Joint Stipulation of Facts on January 24, 2020 ("Joint Stip.," ECF No. 12). Accordingly, there is no dispute over the material facts at issue in this case.

2

the Policy. (ECF No. 1-4 at 1–2.) Plaintiff sought reconsideration of the denial of its claim based upon the "Additional Coverage – Collapse" provision in the Policy but was unsuccessful. (Joint Stip. ¶ 14.) Plaintiff claims Defendant failed to respond to Plaintiff's request for reconsideration. (Pl.'s Mem. Supp. Summ. J. [hereinafter Pl.'s Mem.] at 4, ECF No. 16.)

The standard of review of cross-motions for summary judgment is well-settled in the United States Court of Appeals for the Fourth Circuit.

> On cross-motions for summary judgment, a district court should rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the [Federal Rule of Civil Procedure] 56 standard. Summary judgment is appropriate only if the record shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

*Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (alteration in original) (internal quotations and citations omitted). Counsel do not contend that there are facts in dispute, nor does the record reveal any. Rather, the parties' dispute focuses on the interpretation of the term "decay." Because this is a dispositive question of law, the Court finds summary judgment is appropriate. *See Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 278 (4th Cir. 2018) (applying state law to determine the ambiguity of a contract); *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984) (stating that whether a term is ambiguous is a question of law for the court to decide).

Whether the collapse of the ceiling in Derbyshire Baptist's sanctuary satisfies the requirements for coverage under the provisions of the Policy with Church Mutual requires the Court to delve into the Policy's web of exclusions and limitations. The

3

Policy provides that "[Church Mutual] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss." (Policy at 85.) "Covered Causes of Loss" are defined as "Risks of Direct Physical Loss," unless the Policy specifically limits or excludes the loss. (*Id.* at 107.) Although the Policy generally excludes any loss or damage caused or resulting from collapse, the Policy's "Additional Coverage – Collapse" provision provides that collapse caused by "decay that is hidden from view" *is* covered "unless the presence of such decay is known to an insured prior to collapse."[2] (*Id.* at 108–09, 111–12.)

Plaintiff contends that its claim is covered under the Additional Coverage – Collapse provision in the Policy—specifically because, any interpretation of "decay," including a finding that it is ambiguous, obligates Defendant to provide coverage under Virginia law.[3] (Pl.'s Mem. at 6–11, 21–22.) This Court agrees.

---

[2] With respect to buildings, the "Additional Coverage – Collapse" provision of the Policy defines "Collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." (*Id.* at 111.) The parties do not explicitly state so in their Joint Stipulation but appear from their memoranda to agree that the ceiling failure in Derbyshire Baptist's sanctuary constitutes "Collapse" as defined by the Policy. Furthermore, the parties stated at oral argument that there is no dispute that, to the extent there was any decay in this case, such decay was hidden and unknown.

[3] Although Plaintiff's principal argument is that the loss is covered by the Policy, Plaintiff argues, alternatively, that the term "decay" is ambiguous. (Pl.'s Mem. at 10–11.)

4

The parties agree that Virginia law governs this dispute.[4] Under Virginia law, courts must construe the language of a contract as written; courts cannot make a new contract for the parties different from that plainly intended. *Pilot Life v. Cross-white*, 145 S.E.2d 143, 146 (Va. 1965). This is particularly so when a contract involves an insurance policy because,

> in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties.

*Quesenberry v. Nichols*, 159 S.E.2d 636, 672 (Va. 1968). "[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency, Inc.*, 591 S.E.2d 88, 90–91 (Va. 2004) (quoting *Blue Cross & Blue Shield v. Keller*, 450 S.E.2d 136, 140 (Va. 1994)). However, "where two constructions are equally possible, or where reasonable persons may reach reasonable, but opposite, conclusions as to whether the word applies to a particular situation, the word is ambiguous." *Spence-*

---

[4] A federal district court exercising diversity jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "Applying Virginia choice-of-law principles, questions concerning the validity, effect, and interpretation of a contract are resolved according to the principle of *lex loci contractus*, i.e., the law of the state where the contract was made controls." *Sys. Research & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, 840 F. Supp. 2d 935, 941 n.1 (E.D. Va. 2012) (citing *Woodson v. Celina Mut. Ins.*, 177 S.E.2d 610, 613 (Va. 1970) (internal citations omitted)); *see also Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage."). Here, the contract was delivered to Plaintiff in Virginia, and thus Virginia law applies.

*Parker v. Md. Ins. Grp.*, 937 F. Supp. 551, 556 (E.D. Va. 1996) (internal alterations and quotations omitted) (citing *St. Paul Fire & Marine Ins. v. S.L. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984)).

In an insurance contract dispute, Virginia courts place the burden on the policyholder "to bring himself within the policy." *TRAVCO Ins. v. Ward*, 715 F. Supp. 2d 699, 706 (E.D. Va. 2010) (quoting *Md. Cas. Co. v. Cole*, 158 S.E. 873, 876 (Va. 1931)). If the policyholder does so, the burden shifts to the insurer to prove that an exclusion applies, as policy exclusions constitute an affirmative defense. *Transcon. Ins. v. RBMW, Inc.*, 641 S.E.2d 101, 104 (Va. 2007).

The term "decay" is not defined in the Policy. (*See* Pl.'s Mem. at 7; Def.'s Mem. Supp. Summ. J. [hereinafter Def.'s Mem.] at 11, ECF No. 14.) Therefore, it must be given its ordinary meaning. *Scottsdale Ins. v. Glick*, 397 S.E.2d 105, 108 (Va. 1990). However, dictionary definitions of "decay" are both narrow and broad and thus do not settle the issue. *Compare Decay*, Merriam-Webster's Collegiate Dictionary (10th ed. 1996) ("gradual decline in strength, soundness, or prosperity or in degree of excellence or perfection . . . rot; *specif*: aerobic decomposition of proteins chiefly by bacteria" (internal quotations omitted) (emphasis in original)), *with* Def.'s Mem. Supp. Summ. J. Ex. B at 2, ECF No. 14-3 ("Of material things: Wasting or wearing away, disintegration; dilapidation, ruinous condition" (quoting *Decay*, Oxford English Dictionary (Jan. 28, 2020), https://www.oed.com/view/Entry/48067)).

Therefore, the term "decay" is better interpreted—and should be interpreted—by considering the Policy as a whole.[5] *Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co.*, 666 S.E.2d 527, 531 (Va. 2008). "Decay" first appears in the Policy's provision for exclusions. (*See* Policy at 109 ("We will not pay for loss or damage caused by or resulting from any of the following: . . . . Rust, or other corrosion, decay, deterioration, hidden or latent defect, or any quality in the property that causes it to damage or destroy itself.").) The Policy clarifies soon after, however, in the "Additional Coverage – Collapse" provision, that

> [Church Mutual] *will* pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following: . . . . Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse.

(*Id.* at 111 (emphasis added).) Notably, the Policy also contains a separate exclusion pertaining to "'Fungus,' Wet Rot, Dry Rot and Bacteria." (*Id.* at 108, 112.)

It seems evident to this Court that more than one construction of the Policy is equally possible. "Decay" could plausibly be read as distinct from "deterioration," as they are both enumerated in the same provision of the Policy, and the drafter would not have included both terms if they had identical meanings. *See Pocahontas Min. Ltd. Liability Co., LLC*, 666 S.E.2d at 531 ("No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a

---

[5] At oral argument, Defendant urged this Court to keep the context of the underlying facts in mind when referring to a dictionary for assistance in defining "decay." It did not, however, appear to also consider the context of the use of the term "decay" within the Policy, as this Court is required to do.

presumption that the contracting parties have not used words needlessly."). A reasonable person could conclude that the term's juxtaposition to "deteriorate" implies that the drafter intended to invoke a narrow definition of "decay," given that the term "deteriorate" means "to disintegrate or wear away" or "to make or become worse in character, quality, value, etc." *Deteriorate*, Dictionary.com (June 22, 2020), https://www.dictionary.com/browse/deteriorate.

Yet, a reasonable person could also draw an opposite conclusion. Employing the same canon of construction, "decay" must have a distinct meaning from "rot," which suggests that "decay" must have a broad definition—one that does not merely encompass the decomposition of organic material. Furthermore, "decay" may, in fact, share a similar meaning to "deterioration," given that they appear together in the Policy. *See TravCo Ins. v. Ward*, 736 S.E.2d 321, 325 n.2 (Va. 2012) ("The maxim of *noscitur a sociis* provides that the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases."). Therefore, based upon the text and structure of the Policy, this Court believes that at least "two constructions [of 'decay'] are equally possible."[6] *Spence-Parker*, 937 F. Supp. at 556.

Defendant objects to both a finding of ambiguity and to the use of such a broad construction of "decay," claiming that cases in which courts adopt broad definitions "still

---

[6] "[E]ven if [Church Mutual] did not intend to provide coverage for collapses like the one in question, that is a self-inflicted problem. [Church Mutual], which wrote the Policy, could simply have defined 'decay' narrowly or limited the coverage period." *Easthampton Congregational Church v. Church Mut. Ins.*, 916 F.3d 86, 94 (1st Cir. 2019). This was not simply a scrivener's error but the product of an established drafter. *See Tiger Fibers, LLC v. Aspen Specialty Ins.*, 594 F. Supp. 2d 630, 641–44 (E.D. Va. 2009) (applying Virginia law to resolve a dispute over the meaning of the terms in an insurance policy).

involve[] some degradation of physical material, and not simply the failure of the material due to faulty design or construction" and that no such degradation occurred here. (Def.'s Mem. at 14.) Borrowing from the Supreme Court of New Jersey, Defendant persuasively contends that there is an important distinction between "decay" and "defect," only the former of which was covered by the Policy. *See Bardis v. Stinson*, 132 A.3d 930, 938 (N.J. Super. Ct. App. Div. 2014) (Sapp-Peterson, J., dissenting) ("A 'defect' connotes imperfection from the outset, while 'decay' connotes a decline from a condition that was originally sound."), *rev'd*, 134 A.3d 27, 27 (N.J. 2016) (reversing the lower court's decision primarily for the reasons in Judge Sapp-Patterson's dissent). Relying on this distinction, Defendant claims that, in this case, "the ceiling was not properly fashioned from the beginning and failed due to the effects of gravity on defects in construction, and not as a result of decay." (Def.'s Mem. at 16–17.) Yet, Defendant's argument further supports this Court's analysis as it exposes the malleability of the definition of "decay" under the Policy.

Although Hatlee found that the hangers disconnected from the wood roof beams as a result of stress, Hatlee *also* concluded that "the initial failure . . . resulted from withdrawal of the nails . . . as a result of thermal expansion and contraction of the wood roof beams due to changes in temperature and humidity." (Hatlee's Report at 2.) It seems to this Court that such a failure does not clearly support Defendant's position that the wood beams were "defective," as this characteristic of the wood beams could be

9

characterized as a "defect" or "decay," and the parties have not submitted any further evidence regarding Hatlee's findings and opinions on this point.[7]

Furthermore, employing Defendant's definitions, a reasonable person could understand Hatlee's conclusion—that "the redistribution of the load on the hangers resulted in a *progressive failure* of the hangers and their supported components," *see* Hatlee's Report at 2 (emphasis added)—to demonstrate a "decline from a condition that was originally sound," *see Bardis*, 132 A.3d at 938.[8] Therefore, even if this Court adopted the definition of "decay" that Defendant posits, it is not clear that doing so would preclude coverage.[9] *See Tabernacle-The New Testament Church v. State Farm Fire &*

---

[7] At oral argument, Defendant further elaborated on this point, explaining that it is the hallmark of a construction defect—and implicit in the definition of "defect"—that the materials remained in the same condition following collapse as they were at the time of the initial construction. The Court believes Defendant's argument still misses the mark as Defendant's contention ignores the fact that the nails would not have slipped from the wood beams but for the thermal expansion and contraction—an event that occurred *over time*, thereby deteriorating the integrity of the entire structure.

[8] It is also important to note that "[Derbyshire Baptist] was constructed in 1976." (Hatlee's Report at 225.) Therefore, it appears that the "progressive failure" of Plaintiff's sanctuary's ceiling occurred over the span of forty-three years. *See Travelers Property Cas. v. Eyde Co.*, No. 5:05-CV-168, 2007 WL 107667, at *6 (W.D. Mich. Jan. 9, 2007) (unpublished) ("[T]he age of the building lent credibility to the argument that there was a *deterioration* of the ties and mortar rather than merely a design defect." (emphasis in original)); *compare Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co.*, 616 F. App'x 802, 811 (6th Cir. 2015) (unpublished) (noting the church was eighty-five years old and reversing and remanding the trial court's summary judgment finding for the insurance carrier), *and Stamm Theatres, Inc. v. Hartford Cas. Ins.*, 113 Cal. Rptr. 2d 300, 307 (Cal. 2001) (noting the theater was nearly fifty years old and reversing the trial court's summary judgment finding for the insurance carrier), *with Travelers Property Cas.*, 2007 WL 107667, at *5 (noting that the building was only four years old and finding for the insurance carrier).

[9] The Court wishes to be clear that it does not adopt such a narrow definition of the term "decay," but, even assuming *arguendo* that it did, it is not clear that Defendant would prevail.

10

*Cas. Co.*, 616 F. App'x 802, 811 (6th Cir. 2015) (unpublished) ("Therefore [loss stemming from collapse caused in part by hidden decay] could be covered under the policy even though 'defective material or methods in construction' also 'contribute[d] to the collapse.'").

Accordingly, this Court finds that the term "decay" in the Policy appears to be, at least, ambiguous—if not determinatively broad—and thus this Court must hold in favor of Derbyshire Baptist. *Levine v. Employers Ins.*, 887 F.3d 623, 628 (4th Cir. 2018) ("The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it." (quoting *St. Paul Fire & Marine Ins.*, 316 S.E.2d at 736)). Furthermore, because this Court concludes that the term "decay" is, at best, ambiguous under the Policy—and therefore Plaintiff is entitled to coverage under the Policy—it need not determine whether the Policy's exclusions preclude coverage.[10] *See Easthampton Congregational Church v. Church Mut. Ins.*, 916 F.3d 86, 95 (1st Cir. 2019); *Tabernacle-The New Testament Church*, 616 F. App'x at 811 ("Read in context

---

[10] Even if this Court found only that the Policy definitively reflected a broad definition of the term "decay," this Court believes any analysis of the Policy's general exclusions does not alter its holding for Plaintiff. *See Easthampton Congregational Church v. Church Mut. Ins.*, 322 F. Supp. 3d 230, 242 (D. Mass. 2018) ("The provision for 'Additional Coverage' is not subject to the exclusions relied upon by appellants but is rather a separate provision that supplements coverage already subject to the exclusions. In other words, the 'Additional Coverage' provision supplements the coverage otherwise provided, extending it beyond the carved out exclusions." (quoting *Certain Underwriters at Lloyd's Subscribing to Policy No. WDO-10000 v. KKM Inc.*, 215 S.W.3d 486, 494 (Tex. App. 2006)), *rev'd*, 916 F.3d 86 (1st Cir. 2019) (holding, like the district court, in favor of the plaintiff but on the alternative grounds that the term "decay" was ambiguous). Thus, as a result of the express grant of coverage under the "Additional Coverage – Collapse" provision, the general policy exclusions are inapplicable.

and in conjunction with the collapse extension, the general exclusions for defective design and cracking do not foreclose coverage if the collapse extension is triggered.").

Although its precedent is not binding on this Court, the United States Court of Appeals for the First Circuit's decision in *Easthampton Congregational Church*[11] further supports this Court's holding as it confronted a case virtually identical to this one last year.[12] In that case, the court interpreted the same insurance policy that is the subject of the parties' dispute here. *Easthampton Congregational Church*, 916 F.3d at 88–90. Despite the fact that neither party suggested to the district court that the term "decay" was ambiguous—nor had the district court so held—the First Circuit held that "'decay' could plausibly be read to mean either 'progressive decline' or 'rot.'" *Id.* at 93. Additionally, it further concluded that, because it found the word "decay" was ambiguous, it did not need to consider the remaining exclusions in the Policy as the ambiguity had to be resolved in the plaintiff-church's favor. *Id.* at 93, 95.

This Court finds the First Circuit's perspective persuasive. In fact, another appellate court also concluded that the term "decay" is ambiguous, albeit with respect to

---

[11] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sat by designation.

[12] The Court is aware that, "under Virginia law, an insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language." *PBM Nutritionals, LLC v. Lexington Ins.*, 724 S.E.2d 707, 713 (Va. 2012). The Court identifies this case not because it wishes to inject ambiguity into the meaning of the term "decay" where there is none under Virginia law, *see Nationwide Mut. Ins. v. Wenger*, 278 S.E.2d 874, 877 (Va. 1981) ("[A]n ambiguity, if one exists, must be found on the face of the policy."), but because the Court believes the degree of similarity between the facts and legal issues presented to the First Circuit in *Easthampton Congregational Church* and those of the case at hand—although only persuasive authority—lends considerable support to this Court's finding.

a different policy. *See Stamm Theatres, Inc. v. Hartford Cas. Ins.*, 113 Cal. Rptr. 2d 300, 307 (Cal. 2001). There, the appellate court reversed the district court's grant of summary judgment for the defendant-insurance carrier, finding that "this provision does not militate against a reasonable expectation of coverage." *Id.* As the issue in this case is similarly governed by a reasonableness standard, and given this Court believes that a reasonable person could plausibly read the Policy under one of two equally possible but opposite constructions, this Court believes this Policy also fails to "militate against a reasonable expectation of coverage." *See id.* Accordingly, the Court finds in favor of Plaintiff with respect to the issue of coverage. For these reasons, Plaintiff's Motion for Summary Judgment will be granted in part, and Defendant's Motion for Summary Judgment will be denied in part.

Finally, Plaintiff asserts that Defendant was not acting in good faith when it denied Plaintiff coverage under the Policy. The Court finds Plaintiff's contention unavailing. Both parties have recognized that the interpretation of the term "decay" in the context of insurance coverage is an issue yet to be considered by the Fourth Circuit or the appellate courts of Virginia. (Pl.'s Mem. at 15; Def.'s Mem. at 11.) Furthermore, Defendant is correct that—even if Plaintiff had a legitimate claim for bad faith under Virginia Code § 38.2-209—Plaintiff "cannot *in this current litigation*, claim a wholly separate cause of action for bad faith under the policy. The rule in Virginia is that an insured may recover against an insurer only after a judgment has been entered against the insurer for failure to settle the claim." *US Airways, Inc. v. Commonwealth Ins.*, No. 03-587, 2004 WL 1094684, at *9 (Va. Cir. 2004) (emphasis in original) (citing *Horace Mann Ins. v.*

*GEICO*, 344 S.E.2d 906 (Va. 1986)). Thus, the Court finds that Defendant was not acting in bad faith when it denied Plaintiff's claim because it involved construction of a term on which reasonable minds could differ. Accordingly, Plaintiff is not entitled to an award of attorney's fees. Therefore, as to Plaintiff's claim of bad faith, Plaintiff's Motion for Summary Judgment will be denied in part, and Defendant's Motion for Summary Judgment will be granted in part.

Based on the foregoing analysis, Plaintiff's Motion for Summary Judgment is granted in part and denied in part (ECF No. 15), and Defendant's Motion for Summary Judgment is granted in part and denied in part (ECF No. 13).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 29, 2020
Richmond, Virginia